EDGAR ANDERSON, Appellant, v. JOHN KAIN and MATTIE S. KAIN, Respondents.

(169 N. W. 501.)

**Debtor — new note to creditor — to take place of a past due note — debt for which given — not necessarily paid.**

1. Where a debtor gives to his creditor a note with the understanding that it is to take the place of a past due note which it was agreed should be redelivered to the debtor, it does not follow that the parties regarded the debt for which the first note had been given as paid.

**Trial de novo — mortgage foreclosure — action for — debt — evidenced by renewal note — secured also by chattel mortgage — renewal note and mortgage — to operate as payment — of indebtedness and satisfaction of mortgage — findings to that effect — not supported by evidence.**

2. In a trial de novo of an action to foreclose a real estate mortgage securing indebtedness which is evidenced by a renewal note secured by a chattel mortgage, as well as by the note and real estate mortgage upon which the action is brought, the evidence is examined and held not to support the findings of the trial court that the renewal note and mortgage were to operate as payment of the indebtedness and as a satisfaction of the real estate mortgage.

**Mortgage on homestead — holder of — final proof not made — security of such mortgage — protection of — advancements made to homesteader — of government purchase price — mortgagor receives benefit — obtains patent — advancements may be added to mortgage debt — subrogation to rights — land security for payment.**

3. Where the holder of a mortgage upon a homestead on which final proof has not been made, in order to protect the security of his mortgage, advanced, on behalf of the homesteader, the government purchase price of the homestead, and where the mortgagor avails himself of the benefit of the payment and receives the patent with full knowledge thereof, the amount so advanced may be added to the mortgage and the mortgagee becomes subrogated to the right of the government to treat the land as security for the payment.

**Note and mortgage — indorsed and assigned — assignee may maintain action — foreclosure — in own name — though accountable to others — for part or all of recovery.**

4. Where a note and mortgage have been, respectively, indorsed and assigned, the indorsee and assignee may maintain an action in his own name to foreclose the mortgage for the amount of the lien, though he may be accountable to others for a portion or all of the recovery.

Opinion filed July 6, 1918. Rehearing denied November 16, 1918.

Appeal from the District Court of Eddy County, Honorable *K. E. Leighton,* Judge.

Reversed.

*Siver Serumgard* and *F. R. Stevens,* for appellant.

The burden of proof is upon defendant to show that the original note was paid by the renewal note, and that therefore the mortgage securing the original note indebtedness was satisfied. First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867; Bank v. Flath, 10 N. D. 275.

It is the law that a change of form of a debt or renewal of a mortgage note, or even the return of the old note itself to the maker, does not vitiate the mortgage so long as the mortgage debt remains unpaid and can be traced. 27 Cyc. 1410; 2 Jones, Mortg. 7th ed. p. 501, § 924.

Where an entryman borrows money with which to pay the government price of the land and used it for such purpose, and the debt was secured by a mortgage given by the entryman, the mortgage was a purchase price mortgage and a valid lien upon the land, a homestead, whether executed by the wife or not, and was prior to any right she might have in the land. Keene v. Haven, 59 Pac. 15; Prout v. Bruce, 70 N. W. 512; Irvin v. Gay, 91 N. W. 197; Jackson v. Phillips, 57 Neb. 193, 77 N. W. 684; Converse v. Barnard, 72 N. W. 611; Curry v. Boyle, 11 N. W. 47; 1 Jones, Mortg. 7th ed. 469; 4 N. D. 156; Comp. Laws 1913, §§ 5607, 6718, 6861; Rev. Codes 1905, §§ 5051, 6141, 6281.

The holder of an inferior lien may take up a superior lien by payment, and be subrogated to all rights thereunder. Comp. Laws 1913,

§ 6702; Rev. Codes 1905, § 6126, and cases cited; Foster v. Furlong, 8 N. D. 282; Bank v. Tufst, 14 N. D. 247.

*Cowan & Adamson,* and *H. S. Blood,* for respondent.

Unless the findings of the trial court are clearly against the preponderance of the evidence, they should be sustained. Bergh v. John Wyman Farm Land & Loan Co. 30 N. D. 158.

BIRDZELL, J. This is an appeal from a judgment in favor of the defendants entered in an action to foreclose a mortgage. The facts are as follows:

The defendants, John Kain and Mattie S. Kain, on December 17th, 1909, gave to A. C. Anderson a promissory note for $518 which was due approximately two years after its date and was secured by a real estate mortgage on the east half of the northwest quarter and the northeast quarter of the southwest quarter of Section 27, Township 150 N., Range 64 W. of the 5th P. M. The land described in the mortgage was government land upon which John Kain had filed but upon which he had not, as yet, earned a patent. The note and mortgage were afterward transferred and assigned to the State Bank of Warwick, the Farmers' & Merchants' Bank of Warwick, and to the plaintiff in this action. In so far as the circumstances in connection with these transfers are material to a consideration of the questions raised on this appeal, they will be later considered.

In December, 1911, there was a settlement of mutual accounts between A. C. Anderson and the defendants, as a part of which the defendants gave some notes to Anderson, among which was a new note for $622.23. All the notes given as a part of this settlement were secured by a chattel mortgage. Following the settlement, Charles Anderson, attorney in fact for A. C. Anderson, gave the defendants a statement showing that the $622.23 note was a renewal of the $518 note above referred to.

In the fall of 1912, some conferences were had between representatives of the Andersons and defendants at which the question of raising the necessary money to enable the Kains to make final proof on their homestead was discussed. The plaintiff contends that at these conferences an understanding was reached whereby Siver Serumgard, who represented the Andersons, was to endeavor to raise an amount

of money sufficient to enable the Kains to make their final proof and obtain their patent. The defendants contend that such an agreement was not reached; but that, on the contrary, Mr. McClory, who represented them at the conference, was to raise the money, and that they definitely refused to accept the money that had been obtained for them by Serumgard and preferred to let the matter of the final proof go for another year. In this respect there is a clear conflict between the testimony of Serumgard and that of the defendants. It appears, however, that final proof was made in December, 1912, and that the money required to make the necessary payment to the government Land Office was raised by the Andersons under the direction of Serumgard. The defendant John Kain received the patent and accepted it with knowledge that the proof money was supplied by Charles Anderson, or by Serumgard as agent for Anderson and his wife, A. C. Anderson. A further fact of some significance is that, though the pleading in the case foreshadowed the issue as to the source of the money with which final proof was made and the authority to apply it on behalf of defendants, the record does not account for the failure of the defendants to procure the testimony of P. J. McClory who represented them in the conference which was had with Serumgard.

Among other findings, the trial court found that the Farmers' & Merchants' Bank of Crary, of which the plaintiff, Edgar Anderson, is an officer, advanced to Charles Anderson $300 on a note executed by him, and as security the bank held the oral guaranty of Edgar Anderson, the plaintiff; that Edgar Anderson took an indorsement and assignment of the notes and mortgage in suit; that at the time the renewal note for $622.23 was given it was given with the express understanding that "Charles Anderson would return to the said defendant, John Kain, the note sued upon in this action." From these findings the court concluded "that the defendants, by the payment of the said notes and mortgage in December, 1911, extinguished the lien of said mortgage as to the plaintiff, Edgar Anderson," and "that the defendants are entitled to a judgment canceling and satisfying said mortgage of record. . . . That the plaintiff does not have any lien on the lands of the defendants for the sum of $323 paid into the United States Land Office at Devils Lake as the government price of said lands, nor for any portion of the sum."

The vital question presented upon this appeal is whether or not the indebtedness represented by the $518 note and secured by the mortgage sought to be foreclosed has been paid. The findings of the trial court are favorable to the respondents as to this question, and in support of these findings upon this appeal the respondents' main argument is from the testimony which tends to support the finding. The testimony principally relied upon is that of the defendant, John Kain, Sr., and John Kain, Jr. Upon direct examination, John Kain, Sr., testified that Charles Anderson had requested him to give a new note in place of the original $518 note; that the subject of his indebtedness to Charles Anderson and the security given therefor was discussed, and that Charles Anderson, as agent for A. C. Anderson, had expressed the desire to have chattel security in view of the questionable nature of the mortgage security upon the homestead upon which final proof had not been made or patent earned. He testified that it was the understanding that the old notes were to be given back and that after the new notes were given, Anderson, being unable to find the old notes about the store, gave him, at his request, a receipt showing for what the new notes had been given. On cross-examination he testified in answer to questions as follows:

Q. Did you ever make a demand on Charles Anderson or anyone else for the satisfaction of the real estate mortgage securing exhibit 1?

A. We made a demand on Charles Anderson and he tried to get it for me but said he couldn't find it, he didn't know just where it was but he would get it for me and give the notes to me the next time I came in.

Q. You never asked for a satisfaction?

A. When I saw that he could not produce the notes or didn't produce the notes I asked for a receipt for those notes.

Q. You never asked for a release of the mortgage on this piece of land?

A. I asked for a release of everything and he was to record his new notes and hold them in the place of the old notes. That was the agreement.

There is nothing in the testimony of John Kain, Jr., going to establish an understanding that the mortgage was to be satisfied. His

testimony fully corroborates that of his father to the effect that it was agreed that the new notes should operate as a renewal of the old notes and that the old notes should be surrendered up. The testimony above quoted, together with that which goes to establish the understanding with which the new notes were given, does not satisfactorily establish that it was any part of the understanding that when the new notes were given the mortgage was to be satisfied. In the receipts that the Kains took the new notes were referred to as renewals of the $518 note and there is no showing that they ever attempted to have the mortgage satisfied. Even though it were the understanding that the old notes were to be surrendered, it does not necessarily follow that it was also agreed that the debt was to be regarded as paid. The debt is the principal thing and the notes are but the evidence thereof. The law is that the taking of a new note does not operate to discharge the indebtedness unless it is agreed that the indebtedness should be discharged. The burden of establishing such an agreement is upon the party who asserts it. 22 Am. & Eng. Enc. Law, 555–563. This rule is not altered by the fact that additional security is given for the new notes. 22 Am. & Eng. Enc. Law, 558. The receipt which Anderson gave in January 1912, following the settlement and the execution of the notes in December 1911, shows that the Kains were indebted to A. C. Anderson in an amount exceeding $2,000, and for this indebtedness the chattel mortgage security was apparently inadequate. We do not know to what extent it was inadequate, but it appears that an attempt has been made to realize upon the chattel security by foreclosure, and it is not established that the amount realized upon the foreclosure sale was adequate to discharge the indebtedness. In view of the amount of the indebtedness and the character of the security, it would seem quite improbable that the creditor had agreed to discharge the security that he already held. Furthermore, if it was any part of the understanding that the real estate security was to be satisfied, it would seem that the Kains, instead of merely refusing, as they claim they did refuse, to accept the aid of the Andersons in procuring money with which to make final proof, would have insisted upon the mortgage being satisfied and would have definitely told the Andersons that they had no interest whatever in the making of the final proof. It is difficult to believe that any person possessed of even the slightest

business ability would interest himself to the extent of raising over $300, as the Andersons did in this case, with which to enable another to make final proof upon a homestead, if it were understood, as the Kains contend it was, that the mortgage, which is responsible for the interest manifested was satisfied. In our judgment, the defendants have failed to sustain the burden which is upon them to establish that the mortgage was satisfied.

If the indebtedness for which the mortgage is security has actually been paid, it would apparently be an easy matter to establish that fact and there would be no occasion for counsel to argue, as respondents' counsel do, that the indebtedness was paid by virtue of the fact that the $622.23 note was included in the chattel mortgage foreclosure advertisement. In this argument, respondents rely upon the fallacy that the foreclosure of the security wipes out the indebtedness for which the security is given. It is elementary that a foreclosure only extinguishes the security and that the indebtedness is affected only to the extent that payment is realized through the foreclosure sale.

It is contended that the plaintiff has no lien for the final proof money amounting to $323. This contention is based upon the fact that this money was supplied by the Farmers' Bank of Crary and upon security furnished by Charles Anderson. It is claimed that these facts show conclusively that the plaintiff, who is indorsee of the $518 note and assignee of the mortgage in suit, has no interest in the lien, if there is one, for the advancement made to protect the security of the mortgage. It is undisputed that the Kains have received a patent for the land and consequently enjoy the full benefit of the payment made to the government as owners of the land. Neither is there any question as to the right of the plaintiff, as indorsee of the note and assignee of the mortgage, to maintain the suit in question. He is the party who holds the legal title to the security and to the indebtedness, and is in the position of one in whose name a contract is made for the benefit of a third person, within § 7397 of the Compiled Laws of 1913. See Hays v. Hathorn, 74 N. Y. 486. It may be that the plaintiff is under obligation to account to others for the recovery in this action, but there can be no doubt as to his right to recover in so far as there may be an enforceable lien. The question, as respects the lien for the advancement of the purchase money, narrows down to this: May a

secured creditor who advances money to enable the giver of the security to perfect his title and right to the property which forms the security, add to the mortgage indebtedness the amount so advanced? This identical question has not, so far as we are aware, been decided by any court of last resort, but cases involving analogous situations and identical in principle are of more or less frequent occurrence.

The amount that the homesteader must pay in order to make proof is regarded as the purchase price and, so far as the holder of a preliminary mortgage is concerned, the amount required to be paid to perfect the proof is in every way analogous, if, in fact, it does not amount to, a superior lien. Section 6718, Compiled Laws of 1913, gives to the holder of an inferior lien a right to satisfy a superior lien, when necessary for the protection of his interest, and the further right to be subrogated to all the benefits of the superior lien. It seems to us that when money has been advanced for a mortgagor by a mortgagee, under the circumstances shown in this case, and when the mortgagor has received all the benefits that could possibly accrue from the discharge of his purchase price obligation to the government, as have the Kains in this instance, he should be precluded from denying the right of the mortgagee to be subrogated to the creditor's right to treat the land as security for the payment. In the case of Beyer v. Investors' Syndicate, 31 N. D. 247, 153 N. W. 476, the equitable doctrine of subrogation was held applicable to the payment of taxes by a stockholder in a corporation upon the property owned by the corporation. It was there held that there was nothing in the nature of the county's lien for taxes that would prevent the application of the doctrine of subrogation where it was relied upon in order to effect justice. For similar reasons we can see nothing in the nature of the interest of the government to have the purchase price paid that will prevent the doctrine of subrogation from applying where its application is necessary in order to safeguard the interests of justice.

The judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

ROBINSON, J. I dissent.

GRACE, J. (dissenting). Appeal from the judgment of the district

court of Eddy County, North Dakota, Honorable K. E. Leighton, Judge of the eighth judicial district, sitting at the written request of Honorable C. W. Buttz, Judge of the second judicial district.

This is an action to recover on a promissory note for $518 with interest at 10 per cent per annum, dated December 17, 1909, payable November 1, 1911. The action is also brought to foreclose a certain real estate mortgage on certain land given to secure said note. The complaint states the cause of action upon the promissory note, also for the foreclosure of the said real estate mortgage. Plaintiff further alleges assignment of the note and mortgage for value in good faith and in due course before maturity by A. C. Anderson to the State Bank of Warwick with further allegation that the State Bank of Warwick for value in good faith and in due course assigned the note and mortgage to the Farmers' & Merchants' Bank of Warwick, and further alleges the assignment prior to the commencement of this action of said promissory note and mortgage by the Farmers' & Merchants' Bank of Warwick to Edgar Anderson, who, it is alleged, is the present holder and owner of said note and mortgage.

Complaint further alleges that at the time of the execution of the said note and mortgage, John Kain held the premises described in said mortgage as a government homestead, and had not made final proof and payment for the same; that on or about the 8th day of January, 1913, said John Kain offered final proof for his homestead entry for said premises; that at his request and as the equitable owner of said note and mortgage, the plaintiff paid to the register and receiver of the United States Land Office at Devils Lake, $323 as purchase money and fees and commission to the United States Land Office for the purchase of said land; that final receipt subsequently and prior to the commencement of this action was issued to John Kain and also the patent.

The defendant, in his answer, alleges that the note became due December 1, 1911, and denies that the said note and mortgage was assigned to the State Bank of Warwick prior to the maturity of said note and alleges that such assignment by A. C. Anderson to the State Bank of Warwick was not made until the 13th day of January, 1912, and not recorded in Eddy county until the 6th day of January, 1916, and alleges that the said mortgage was not assigned to the plaintiff

until the 22d day of January, 1914, and said assignment was not recorded until the 16th day of January, 1916. Defendant further alleges that after said note and mortgage became due and before any assignment of said note or mortgage was made or recorded, the defendants executed other notes to the said A. C. Anderson without any knowledge by the defendants of any assignment being made by said A. C. Anderson of said note and mortgage to the State Bank of Warwick or to anyone else, and without any knowledge of any assignment of said note and mortgage by the State Bank of Warwick to the Farmers' & Merchants' Bank of Warwick and without any knowledge of the assignment from the Farmers' & Merchants' Bank of Warwick to the plaintiff, and that said other notes executed by the defendants to the said A. C. Anderson, evidence the same indebtedness as the note and mortgage sued upon, in this action, together with other indebtedness, and the defendant secured said notes by executing a chattel mortgage on the chattels of said John Kain; that the said A. C. Anderson converted the said chattels covered by said chattel mortgage securing said notes, to a value far in excess of the amount of the indebtedness represented by said notes, and prior to the bringing of this action and prior to any attempt to foreclose the said mortgage, the defendants instituted an action in the district court of Benson county against A. C. Anderson and Charles Anderson, for the value of said chattels so converted by the said A. C. Anderson and Charles Anderson counterclaimed against the value of said property so converted by them the said other notes executed by these defendants to the said A. C. Anderson and representing the said indebtedness together with other indebtedness as is evidenced by the note sued upon, and the plaintiff seeks to foreclose this action; and said action between these defendants and the said A. C. Anderson and Charles Anderson was tried in the district court of Benson county with a jury and, in said action, the jury returned a verdict in favor of these defendants and against said A. C. Anderson on the 15th day of December, 1915, for the sum of $603.85, the same being the excess of the value of the chattels converted over and above the amount found by the jury to be due on said note and all of the other notes executed by these defendants in lieu of the note sued upon, and the mortgage which the plaintiff seeks to foreclose,

40 N. D.—41.

including other indebtedness, have been thus paid and their payment has been thus adjudicated prior to the bringing of this action.

Plaintiffs further, in substance, allege that after the note sued upon in this action became due, and before the defendant or either of them had any knowledge of any assignment of said note and mortgage, and before any assignment thereof was recorded, and while the defendant supposed that the plaintiff, said A. C. Anderson, was the holder of the note and mortgage, that the defendants executed other notes for the indebtedness represented by the note and mortgage sued upon in this action, and allege that it was specifically agreed between the defendants and the said A. C. Anderson that these defendants, by the execution of the said other notes and securing the same by chattel mortgage, paid the said indebtedness, note and mortgage sued upon in this action, in full, and that the same was not due and owing from the defendants and plaintiff or to any other person. The defendants deny that the plaintiff on the 8th day of January, 1913, or at any other time, was the equitable owner of the note and mortgage sued upon in this action, or that he, at the request of the said John Kain, paid to the register and receiver of the United States Land Office at Devils Lake the sum of $323 or any other sum as the purchase money, fees and commissions to the United States Land Office at Devils Lake for the purchase price of said land and further alleged that on the 8th day of January, 1913, plaintiff was not the owner of said note and mortgage, equitably or otherwise, and that the said A. C. Anderson was the owner and holder of said note and mortgage, and further alleged that John Kain specifically refused to accept any payment of commissions and fees to the United States Land Office at Devils Lake for the purchase price of said land from the plaintiff, and that, if the plaintiff paid such fees to the register and receiver of the United States Land Office at Devils Lake, he did so without the knowledge of these defendants or either of them, and contrary to the wish and desire and against their specific order for him not to pay the same. Defendant further alleged that prior to the 8th day of January, 1913, at which time the plaintiff claims to have paid the register and receiver of the United States Land Office at Devils Lake the said $323, that the note and mortgage sued upon had been fully paid by the defendants to the said A. C. Anderson. Statement of facts is as follows:

On the 7th day of December, 1909, the defendants, John Kain and Mattie S. Kain, gave their note to A. C. Anderson and secured it by mortgage on the homestead which had just been previously filed upon. The defendants were indebted to the International Harvester Company for the sum of $518 and they gave said note and mortgage to A. C. Anderson at the request of Charles Anderson who agreed to pay the International Harvester Company for them, which he afterwards did. It is claimed by the defendants that Charles Anderson put this note and mortgage up as collateral security to the State Bank of Warwick for a pre-existing indebtedness of A. C. Anderson to the bank. Plaintiff claims that on December 6, 1911, a statement was had between A. C. Anderson and John Kain, Sr., and John Kain, Jr., at Warwick, North Dakota, in which statement Charles Anderson represented to Kain that he owned the $518 note. It is further claimed at said time, that an agreement was made between John Kain, Sr., and John Kain, Jr., and Charles Anderson, acting for his wife, A. C. Anderson, that a new note of $622.22 was executed and secured by chattel mortgage, and was accepted in payment of the old note for $518 and the mortgage securing same, and that the $518 note secured by the mortgage on the homestead was to be returned and the mortgage released.

The first question which we consider is: Was the $518 note and mortgage paid by the giving of the new note for $622.22 by John Kain, Sr., and John Kain, Jr., December 6, 1911, which note was secured by the chattel mortgage and which new note was claimed to have been given by the Kains not as a renewal note but by a specific agreement, as they claim, in payment of the $518 note and for a release of the mortgage upon the homestead? If the renewal note was given under the agreement as claimed by the defendants and the $518 note at the time of the giving of the new note was in the possession or under the control of A. C. Anderson, or afterwards came into his possession, then the new note of $622.22, under such specific agreement, was not a renewal note in the ordinary sense but, by reason of the specific agreement, operated as a discharge of the original note of $518, and the mortgage securing the same.

It is the law, in this state, that where a renewal note is given and nothing is said and no special agreement had, it does not operate as a

discharge in payment of the original obligation, but the rule would be different where there is a special agreement that the original obligation would be discharged.

Anderson claims that he turned the $518 note over to the State Bank of Warwick as collateral security to A. C. Anderson's indebtedness to such bank about the 10th day of January, 1910. It is claimed that about two years after this date the note was turned over to the Farmers' & Merchants' Bank of Warwick. It does not appear that the State Bank of Warwick owed the Farmers' & Merchants' Bank of Warwick, or, in any manner, turned the note over to the Farmers' & Merchants' Bank of Warwick in due course of business for value. It does not appear that the Farmers' & Merchants' Bank of Warwick paid the State Bank of Warwick anything for said note. It does appear that A. C. Anderson made an assignment, in writing, of both the note and mortgage to the Farmers' & Merchants' Bank of Warwick on January 13, 1912, which assignment was made by her attorney in fact, Charles Anderson, and it appearing nowhere that the Farmers' & Merchants' Bank of Warwick paid anything for said note or that they took it in the ordinary course of business for value, it cannot be said that in their hands they are innocent purchasers for value in due course of business, and in view of these circumstances, the written assignment of A. C. Anderson of the note and mortgage in question, whether the note was passed directly from the State Bank of Warwick to the Farmers' & Merchants' Bank of Warwick would really not be any different than if the note were returned to A. C. Anderson by the State Bank of Warwick and indorsed by her or her attorney in fact to the Farmers' & Merchants' Bank of Warwick. If this is true, and it is also true, as the trial court found that the $622.22 note was given in payment of the $518 note, or given with the understanding and agreement that the $518 note was to be returned together with the real estate mortgage securing the same, then at the time the Farmers' & Merchants' Bank of Warwick took the $518 note and mortgage securing same, said note and mortgage were of no effect and were, in fact, paid by the renewal $622.22 note and the chattel mortgage given to secure such note; but even if it were assumed that the Farmers' & Merchants' Bank of Warwick came into the possession of the $518 note in due course of business for value, which, under the circumstances above stated, we do not

believe they did, it appears from the record they afterwards indorsed said note and turned it over to Charles Anderson which indorscment was as follows:

"Without recourse to us to pay to Charles Anderson or order.

"Farmers' & Merchants' Bank, Warwick, North Dakota, Morton Anderson Pt."

Charles Anderson must be held to be the attorney in fact and the agent of A. C. Anderson in all these transactions. He desired to use said paper for the purpose of borrowing money from Edgar Anderson, plaintiff in this case, for the purpose of furnishing the money in the sum of $300 for the Kains and making final proof and pay the money required to pay the United States government where commutation proof is made. He took the note to Edgar Anderson with this indorsement upon it. Edgar Anderson did not loan him the money but referred him to the Farmers' Bank of Crary. The Farmers' Bank of Crary did loan to Charles Anderson the $300, and the $300 was advanced to him out of the funds of the Bank of Crary, and not by Edgar Anderson personally. Edgar Anderson was an officer of the Farmers' Bank of Crary and was its president. Edgar Anderson testifies that it was not his money personally, and that the loan was not made by him personally, and that he was acting as agent for the bank. There is no doubt from the record but what Edgar Anderson did not make the loan of $300 to Charles Anderson personally, but that the loan was made by the Farmers' Bank of Crary to Charles Anderson as a bank loan. The bank took Charles Anderson's note for the loan. No written assignment of the note or mortgage was ever made to the Farmers' Bank of Crary, nor any assignment made of the note and mortgage by the Farmers' Bank of Crary to the plaintiff. The plaintiff claims that he guaranteed the note, but he did not do so in writing.

In view of all these circumstances, even assuming that the Farmers' & Merchants' Bank of Warwick came into possession of the note in due course, they afterwards voluntarily turned it over to Charles Anderson, agent and attorney in fact for A. C. Anderson, and indorsed it over to him. It thus came into his possession legally as the agent of A. C. Anderson. At the time it came into his possession, it was past due and became subject to the agreement testified to by the

Kains that this note and mortgage securing it were to be surrendered at the time of the execution of the note for $622.22 and the chattel mortgage securing it. The $518 note and mortgage securing the same thus became of no further effect, and could not thereafter pass as negotiable paper in due course.

The indorsement from the Farmers' & Merchants' Bank of Warwick was afterwards erased and the indorsement on the note then was the indorsement from the State Bank of Warwick to the Farmers' & Merchants' Bank of Warwick, and from the Farmers' & Merchants' Bank of Warwick to Edgar Anderson; but, while Charles Anderson had possession of the note for the purpose of borrowing money, and for the purpose of placing the $518 note as security for the borrowing of the $300, he was in possession of the $518 note lawfully, after the same was turned over to him properly indorsed for the purpose of borrowing money. The note thus being in his possession in the legal course of business and after he made the agreement on behalf of A. C. Anderson that this note should be surrendered on the execution of the $622.22 note, the agreement thus became binding and the note, in his hands, was of no effect and was void, the same having been paid under such agreement, if such agreement were made.

A settlement was had between Charles Anderson, on behalf of A. C. Anderson and the Kains in the fall of 1911, and the note for $622.22 was given in renewal of the $518 note. The defendants claiming that the $622.22 note was given under the specific agreement referred to and operated as a payment and discharge of the $518 note. The evidence on this subject is in direct conflict, the defendants testifying that such was the agreement and the plaintiff denying same. The trial court found for the defendants, thus believing their version of the story, and holding that the $518 note was paid by reason of such specific agreement. The trial court had the opportunity of seeing all the witnesses personally, and was in a better position than we to weigh the credibility of the witnesses, and we see no reason to disturb the conclusion which the trial court reached in this regard.

It really appears to us, in any event, that the plaintiff herein is not the real party in interest. He never loaned any money personally to the Kains or to anyone for the Kains to be used in the payment of the $300. He never had any talk with the Kains and they deny that

they ever gave Serumgard any authority to procure the money for them. It must necessarily follow that Edgar Anderson would have no interest in said note or mortgage even if the same had not been cancelled under the specific agreement, either at the time it was turned over by the State Bank of Warwick to the Farmers' & Merchants' Bank of Warwick, or at the time it came into the hands of Charles Anderson, agent and attorney in fact of A. C. Anderson.

If Edgar Anderson had come into the lawful possession of the $518 note and mortgage and thus became equitable owner of the same, we are of the opinion that, if after coming into possession of such mortgage, he loaned or advanced the $300 for the purpose of paying the amount to the United States government under the commutation proof, he would not have a lien upon the land in consequence thereof, unless at the time of the advancing of the $300, there was a specific agreement that a mortgage was to be given to secure the $300.

We are of the opinion that the $518 note and mortgage was paid at the time of the giving of the $622.22 note and the chattel mortgage securing the same by reason of the specific agreement made between the plaintiff and the defendants at the time of the giving of the renewal note, the agreement being to the effect that the $518 note and the real estate mortgage securing the same should be returned to the defendants. It is clear there is no lien or mortgage for the $518 nor the $300 under the circumstances existing in this case. It also appears that the $300 claimed to be advanced as proof money was, in point of time, approximately three years subsequent to the date of the mortgage. Under the testimony, if it were advanced, it was without the authority or consent of the Kains. Under these circumstances, it is utterly impossible for the $300 to become an actual existing lien upon the land.

It is a rule of law quite well established, that upon the trial of an action before the court without a jury and the witnesses appear in person and give their testimony so that the trial court has an opportunity of seeing the witnesses, hear them testify and observe their demeanor when giving such testimony, that the findings of fact made by the trial court under these circumstances should not be disturbed unless such findings are clearly against the preponderance of the evidence. That rule applies squarely in this case. The trial court saw

all the witnesses in this case and heard them testify and determined what testimony of the witnesses was entitled to credit and that which was not entitled to credit. In other words, the court determined the credibility of the witnesses and made its findings accordingly. As we view it, those findings of fact are not contrary to the testimony nor the preponderance of the evidence. The trial court believed the testimony of the Kains and their witnesses. The trial court had the opportunity of seeing the Kains on the stand while testifying and certainly was in a better position to know if they were telling the truth than this court is. If the testimony of the Kains and their witnesses is admitted to be true, which of course the trial court in effect found, then the findings of the trial court are amply sustained by the testimony, and the findings of the trial court under the rule above stated should by no means be disturbed. Unless this rule is adhered to quite generally, then the trial in the court below becomes somewhat of an unnecessary proceeding. If the trial court's findings of fact in a case like this where all the witnesses are before it are accorded no weight, in what kind of a case should the findings of the trial court have weight with this court?