CHARLES L. ROUSE, Appellant, v. RUDOLPH ZIMMERMAN
et al.

ROLF REITE, Respondent.

(212 N. W. 515.)

**Estates — merger of, when not assumed.**

1. In the absence of proof to the contrary equity assumes it was not the intention of the holder of a greater estate and a less estate which meet in his person to merge the same when an intermediate estate intervenes.

**Subrogation — when holder of third mortgage entitled thereto.**

2. Where the holder of a third mortgage pays the instalments due on the first mortgage, together with accruing costs, in order to prevent foreclosure of this first mortgage, he is entitled to be subrogated to the rights under the first mortgage, to the extent of his payments, as against an intervening second mortgage, even though he has foreclosed his third mortgage and received sheriff's deed thereon, in the absence of proof showing his intention to merge the estates.

**Subrogation — payment of instalments — separate debts.**

3. In such case it is not necessary for the one claiming the right of subrogation to pay all instalments due in the future before he is entitled to his rights. Each instalment is a separate debt and it is sufficient if he has paid all the amount due on the debt for which he claims the right of subrogation.

Opinion filed February 14, 1927.

Estates, 21 C. J. § 233 p. 1033 n. 24; § 234 p. 1034 n. 35, 36, 37; p. 1035 n. 38, 40, 42, 45, 47.   Subrogation, 37 Cyc. p. 459 n. 11; p. 465 n. 51.

Appeal·from the District Court of Divide County, *Lowe, J.*
Reversed.   Judgment ordered for plaintiff.
*G. W. Twiford (Scott Cameron,* on oral argument), for appellant.
*Geo. P. Homnes,* for respondent.

**Annotation.**— (1) Merger not necessary result of union of two estates in one person, see 10 R. C. L. pp. 666, 667; 2 R. C. L. Supp. 1032; 5 R. C. L. Supp. 562.

(2) As to right of junior incumbrancer who pays prior incumbrance to be subrogated to the rights of senior incumbrancer, see annotation in 23 L.R.A. 127; 25. R. C. L. 1347.

BURR, J. Defendant Zimmerman was the owner of the southwest quarter of section 9, township 161, range 95, Divide county, this state. He gave a first mortgage on this land to the Federal Land Bank at St. Paul, to secure the sum of $1,900, a second mortgage to one Rolf Reite, and a third mortgage to the plaintiff. The Federal Land Bank began foreclosure of its mortgage. The plaintiff, to prevent this foreclosure, paid to the Federal Land Bank the amount for which the mortgage was being foreclosed, $140, together with all of the costs incurred up to that time, amounting in all to $183.31. Plaintiff then foreclosed his mortgage, the sale taking place January 30, 1922, and afterwards received a sheriff's deed. Thereafter plaintiff paid three subsequent instalments due the Federal Land Bank, amounting to $185.45. Defendant Reite began foreclosure on his mortgage, the sale being held March 18, 1922, and thereafter secured a sheriff's deed. Plaintiff demanded of defendant Reite that he reimburse him for the amount of payment which he had made on the mortgage due the Federal Land Bank, and upon the failure of the defendant Reite to make such payments this action was commenced to secure a decree from the court to the effect that the plaintiff was subrogated to the rights, lien, and equities of the Federal Land Bank on its mortgage to the extent of $370.76, being the amount of the principal and interest and costs paid by the plaintiff to the Federal Land Bank under the terms of its mortgage, and to prevent foreclosure.

While the answer admits the first five paragraphs of the complaint it denies the remaining four. These relate to the fact of the default by Zimmerman in his payments of interest and portion of the principal to the Federal Land Bank, the foreclosure proceedings by the Federal Land Bank and amounts paid by the plaintiff, the validity of the lien of the Federal Land Bank and the purpose of payments by the plaintiff. However, the evidence shows beyond dispute the amount of payments made by the plaintiff and no contention is made by the defendant Reite—the only defendant answering—as to all of the other facts except the purpose of the plaintiff in making the payments. The record shows that either expressly or tacitly the parties have agreed upon all of the issues involved, except the intent of the plaintiff as to merger, and its legal effect.

In this case the plaintiff does not quarrel with the findings of the

trial court so far as they go. His contention is that the court erred in failing to find two other facts from the testimony, and that these other facts sought would have resulted in different conclusions. Because of this he claims further the court erred in the conclusions of law.

The first error complained of is that the court failed to find the Federal Land Bank agreed to subrogation of the plaintiff to its rights; second, that the court failed to find there was no intent on the part of the plaintiff to merge his equitable right of subrogation for money advanced to pay interest and foreclosure expenses in the matter of the first mortgage with his interest under his third mortgage, and the third is the court erred in its conclusion of law when it held that when the plaintiff foreclosed his own mortgage he thus merged in the deed whatever right he may have had to subrogation.

In the case at bar there is no question but what the defendant Federal Land Bank consented that the plaintiff be subrogated to the rights which the Federal Land Bank may have had in the interest and portion of the principal paid by the plaintiff. This consent is set forth in a stipulation made in open court between the Land Bank and the plaintiff and which is a part of the record in the case. However, in our view the consent or nonconsent of the Federal Land Bank is immaterial, subrogation being determined by other factors, and this consent is not evidenced until the time of trial—long after the occurrence of the facts on which subrogation is based.

While it is the general rule that where a greater and a less estate meet in the same person the less estate is at once merged in the greater, this rule is subject to exceptions. As a general principle equity does not favor the doctrine of merger and hence will keep the estates that are united in one person distinct when the intention of that person is expressed or implied. This principle comes into existence for the benefit of the person holding the estates—not for the benefit of some one else—so it is determined by the interest of the party holding the estates. This old English rule has been generally followed by our courts. When there is anything in the record which shows that it is advantageous to the party to keep the estates separate then there is the implied intent on his part to keep them separate. Where it would be of no use to a party to keep a lien on his estate then this intent is not

implied. However equity does not require this party to repudiate any intent to keep the estates separate. If any overt act be required it is one to show that he did not intend to keep them apart. If the record shows that it is for his interest that they be kept separate then the law presumes he intended to keep them separate and the burden would be upon him who desired to show they were merged. In fact, so far has this rule gone that we may state it to be the general rule that where a greater estate and a less estate meet in the same person, but with an intermediate estate, then the law presumes there was no merger in the absence of proof showing the holder of the two estates intended to merge them. Justice between parties is the aim of equity and if by keeping the estates separate, justice will be done the law presumes it was the intent of the party to keep them separate. As stated in Stantons v. Thompson, 49 N. H. 272, "Whether the mortgage was to be kept on foot or not depends, ordinarily, upon the intention of the parties, but in order to protect the mortgage against an intervening title, the law will uphold the mortgage, even when the parties had undertaken to discharge it, unless injustice would be done thereby." On page 279 of this opinion the court says, "Wherever it is for his interest by reason of some intervening title or other cause, that the mortgage should be upheld as a source of title, it will not at law be regarded as merged." It is immaterial whether the contract interest is that of another creditor or of the holder. The principle is for the protection of the one who has the two or more estates which are said to have merged—not for the protection of some one else—and therefore it is immaterial what may be the relationship of the other party. It may be true that where a junior mortgagee seeks to compel a senior mortgagee to assign to him by tender of the amount due on the senior mortgage the junior mortgagee must first be required to show such an assignment is necessary for his protection, but this is for the purpose of compelling an assignment. It has nothing to do with the relationship of the junior mortgagee to some mortgagee other than the senior. In the case at bar, however, the senior mortgagee consents to the subrogation hence that rule is not involved in this case. The testimony in the case at bar is silent as to the intent of the plaintiff in the alleged merger. There were but two witnesses, plaintiff and the defendant Reite. The conflict between them was as to the conversation which took place. Each

witness gave a different version of the conversation but each version of
the conversation suggests specifically the intent of the plaintiff in pay-
ing instalments and costs; hence the presumption is the plaintiff, who
was the holder of the third mortgage, intended when he paid the interest
due on the first mortgage to keep his rights thereunder separate from
the third mortgage because of the intervening second mortgage held
by the defendant Reite. In the absence of testimony to the contrary
this is the presumption of law. The very record shows that whatever
he did was to protect his third mortgage. He states that when he
found the Federal Land Bank had started the foreclosure of its mort-
gage he told the defendant Reite "something had to be done right away
before that was brought to a close or their mortgage would have to be
paid," and the defendant Reite admits that when he had his conversa-
tion with plaintiff the plaintiff had told him he had "stopped fore-
closure by the Federal Land Bank and put quite a little money into it."
It is clear therefore that when the plaintiff acted in paying the interest
coupons he did it to prevent the foreclosure of the first mortgage and
thus protect his own. Hence it was for his interest to do so and because
it was for his interest to do so the court presumes he intended to keep
the estates separate even though thereafter he foreclosed his second
mortgage and received a sheriff's deed. There was an intervening
mortgage. This intervening mortgage was held by defendant Reite
and foreclosed. Of course this foreclosure cut out the plaintiff's fore-
closure. What the plaintiff did resulted in the protection to the de-
fendant Reite. It is true when defendant Reite foreclosed he did not
need to worry about the plaintiff's mortgage. His care was the first
mortgage held by the Federal Land Bank; but plaintiff protected the
interest of the defendant Reite, as well as his own, by paying these
interest coupons and stopping the foreclosure. Hence it is only justice
that these estates should not merge. Not having merged the plaintiff
is subrogated to the rights of the Federal Land Bank and may enforce
them against the defendant Reite. Subd. 2, § 6718 of the Code is
applicable to this case. The principle for subrogation is set forth in
Anderson v. Kain, 40 N. D. 633-639, 169 N. W. 501.

The defendant Reite lays great stress upon the fact that the plaintiff
had not purchased the Federal Land Bank mortgage in its entirety.
He says that in order to entitle the plaintiff to subrogation he should

have paid the whole debt and satisfied the senior creditor in full. Of course this depends upon what is meant by the whole debt. There is nothing in the evidence whatever to show that this was not the whole debt. In any event it is clear the mortgage stood as security for the interest and the instalments and principal paid by the Federal Land Bank by the plaintiff. There is only the testimony of two witnesses, the plaintiff and the defendant Reite. We have no means of knowing the extent of the Federal Land Bank mortgage, nor its terms. Evidently the parties were so well acquainted with the state of affairs they overlooked the fact that the members of this court, no matter how prescient they are, could not be expected to know these facts and of course cannot take judicial notice of them. We do not know whether the amount paid by the plaintiff was the entire debt due the Federal Land Bank. However, assuming it was not—seeing that whatever argument is presented by both sides in the briefs proves this—nevertheless it appears that the payments made were the payments of instalments. The plaintiff paid the costs of the foreclosure of the Federal Land Bank mortgage up to the time it was stopped, $45.31, as well as the payments which were delinquent on Dec. 1, 1921, $140. He then made a payment of $61.95, Feb. 25, 1922, one of $61.75, Aug. 17, 1922, and one of $61.75 on Jan. 24, 1923. These dates are the dates of payment and they indicate semiannual payments. Whether these were all the payments left and thus satisfied the entire debt or whether they were merely payments that were due we cannot say. However, it is quite clear they were separate instalments, each a contract by itself, and thus when he made these payments he made payments of the entire debt that was due. This is all the more apparent where we consider the Federal Land Bank was foreclosing because of nonpayment of these amounts, and in the absence of proof we may presume the bank had a right under its mortgage to so foreclose. No one denies this. The plaintiff is subrogated to the rights of the Federal Land Bank. If the bank may foreclose for nonpayment of these sums without reference to other items, so may the plaintiff. This satisfies the rule that in order to enforce his right of subrogation to this intervening estate he must pay the entire debt. "He is not compelled to await maturity of the principal's entire indebtedness before proceeding against him for the instalments actually paid in his behalf." Fender v. Fender, 30 Ga. App.

319, 117 S. E. 676. Where an entire debt is split into several instalments, due at different·times, each instalment is a separate debt. In the case of Nettleton v. Ramsey County Land & Loan Co. 54 Minn. 395, 40 Am. St. Rep. 342, 56 N. W. 128, the plaintiff was obligated· to pay .the entire debt which' was represented by various instalment notes. He paid the notes that were due but there was a portion of the debt still to be paid. The court held however, that this did not prevent him from insisting on his right of subrogation when he had paid all of the debt that was then due. The case cited was very similar to the case at bar in this that as to the fact of the amount of the debt "the evidence is not very strong or satisfactory, but there is some evidence to support the finding; 'enough,' we 'think, to call upon the defendant to make some showing in rebuttal." This is the situation here. Hence under either theory regarding the entire indebtedness, plaintiff may enforce his right. It was the duty of the defendant to show the plaintiff intended to merge his estates or that he did not pay the entire debt due. The judgment is reversed with order to enter a decree as prayed for in the complaint with costs.

BIRDZELL, Ch. J., and NUESSLE, CHRISTIANSON, and BURKE, JJ., concur.