## DAKOTA NORTHWESTERN BANK NATIONAL ASSOCIATION, Plaintiff and Appellee,

### v.

## Clarence SCHOLLMEYER and Andrea Schollmeyer, d/b/a B & S Feeds, Defendants and Appellants.

### Civ. No. 9962.

Supreme Court of North Dakota.

Oct. 15, 1981.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiff and appellee; argued by Thomas A. Mayer, Bismarck.

Bickle, Coles & Snyder, Bismarck, for defendants and appellants; argued by Robert J. Snyder, Bismarck.

PEDERSON, Justice.

This appeal, involving the intricacies of farm finance, concerns the propriety of a district court order granting summary judgment for the payee, Dakota Northwestern Bank National Association (Bank), in an action against the makers (Schollmeyers) to recover the balance due on a promissory note.

The note in question, in the amount of $24,000, was executed by Clarence and Andrea Schollmeyer, d/b/a B & S Feeds, on February 2, 1978. Three payments were made on this note, leaving a balance of $20,838.81 due as of April 20, 1979.[1] The Bank, on February 27, 1980, sued for this amount, plus interest at 10% per annum, and to foreclose its security interest in the collateral securing the note.

The Schollmeyers' answer to the complaint admitted that they were indebted to the Bank in the principal sum of $20,838.81, plus 10% interest per annum, but denied that they were in default.

The Bank then moved for summary judgment, supporting its motion with an affidavit, the note and the payment schedule thereon. The Schollmeyers resisted the Bank's motion with a counter-affidavit, stating that the "obligation was cancelled and extinguished . . . and . . . included in a

1. The payment schedule on the note records the following payments:

| DATE | ON INTEREST | ON PRINCIPAL |
| --- | --- | --- |
| 6–12–78 | $ 854.79 | $ 145.21 |
| 6–12–78 | | 17.50 |
| 4–20–79 | 2,037.60 | 2,998.48 |

subsequent obligation executed April 20, 1979."

The loan of April 20, 1979, on which the Schollmeyers rely to oppose the summary judgment motion, lies at the heart of this controversy. This loan, in the amount of $221,120.58, was executed by Clarence Schollmeyer individually. One payment, in the amount of $59,288.54, derived from the proceeds of two insurance checks Schollmeyer had previously assigned to the Bank, was made on this note on May 1, 1979. The two insurance checks were for $42,348.96 and $16,939.58. On November 21, 1979, prior to the commencement of the instant action, the Bank sued the Schollmeyers to recover the balance due on the $221,120.58 note and to foreclose its security interest in the personal property securing the note. Partial summary judgment, in the amount of $162,468.14, plus interest at 10½% per annum, was awarded the Bank.[2]

A hearing on the Bank's motion for summary judgment in the present action (the $24,000 note) was held on September 22, 1980. At this hearing, the Bank, through oral testimony and documentary evidence, sought to establish that the $24,000 note was in default and to refute the Schollmeyers' claim that the $24,000 note was "incorporated" in the $221,120.58 note.

After the hearing the Schollmeyers offered an affidavit which described the events surrounding the execution of the $221,120.58 note. In this affidavit Mr. Schollmeyer stated that he was "called to the . . . Bank" on April 20, 1979 in order to sign a "new financial agreement" and that bank officials told him that all of his existing indebtedness would be consolidated into

a single note. He further asserted that the $42,348.96 insurance check was intended for reduction of his original farm note[3] while the other insurance check, in the amount of $16,939.58, was intended for reduction of the $24,000 note.[4]

The district court granted the Bank's motion for summary judgment on November 24, 1980. Judgment for the balance due on the B & S Feeds' note, $20,838.81, plus interest at 10% per annum, and for foreclosure of the Bank's security interest in the collateral securing the note was entered on December 4, 1980.

## I. WAIVER

The threshold issue presented by this appeal arises out of the events ensuing after the entry of judgment.

The district court stayed execution of the judgment on the condition that the Schollmeyers file a $13,000 supersedeas bond with the court by February 5, 1981. The bond was not filed and the Bank proceeded to enforce the judgment. The first scheduled foreclosure sale was cancelled by the Bank and, before a second scheduled sale, the parties entered into an agreement to sell the collateral at a public auction. The auction sale was held on March 26, 1981. The net proceeds from the sale have been applied to partially satisfy the judgment in this case. The Bank now argues that the Schollmeyers waived their right to appeal by agreeing to the sale of the collateral securing the note. They contend that the application of the sale proceeds to satisfy the judgment makes this appeal moot.

We do not agree.

2. In the $221,120.58 suit, the Schollmeyers filed a counterclaim against the Bank seeking compensatory and punitive damages for breach of several credit agreements and impairment of their credit rating. The district court stayed enforcement of the judgment pending final disposition of the Bank's foreclosure claim and the Schollmeyers' counterclaim. The counterclaim is still pending.

3. Presumably Mr. Schollmeyer is referring to the $187,382.75 note listed on the Bank's summary. *See* Exhibit # 1, n. 6, *infra*.

4. In the affidavit Mr. Schollmeyer also states: (1) that he was "given to believe that there was some urgency in completing the transaction" because the note (and credit request) were signed "without waiting for [his] wife . . . to . . . execute them"; (2) that the note and credit request were blank and that he "was informed that he would receive copies of them after the amounts to be inserted were determined"; and (3) that he has not received copies of "said credit request and note or the paid notes which were supposedly consolidated into the note executed April 20, 1979."

The general rule is that a party who voluntarily pays a judgment against him waives his right to appeal from the judgment. *Grady v. Hansel*, 57 N.D. 722, 223 N.W. 937 (1929); *St. Vincent's Nursing Home v. Department of Labor*, 168 N.W.2d 265 (N.D.1969). On the other hand, "payment of a judgment under coercion or duress is not a waiver of the right to appeal." *Grady v. Hansel, supra.* In *Grady* we held that payment of a judgment under duress imposed by execution is not voluntary. In *Grady* "payment was to a sheriff armed with an execution," *Grady v. Hansel, supra*, 223 N.W. at 938; payment here was made from the proceeds of a public auction sale conducted in accordance with an agreement between the parties. The agreement authorizing the sale was, however, signed after a special execution had been issued. The Bank had cancelled one foreclosure sale and scheduled another when the agreement was signed.

Under these circumstances, we cannot say that payment was voluntary so as to work a waiver of the right to appeal.

## II. THE PROPRIETY OF THE SUMMARY JUDGMENT

The central issue presented in this appeal is whether or not the district court properly granted the Bank's motion for summary judgment.

The legal litany governing the grant of summary judgment is well-established. A summary judgment may be based upon pleadings, depositions, admissions, affidavits, interrogatories and the inferences that may be drawn therefrom. *Johnson v. Haugland*, 303 N.W.2d 533, 537 (N.D.1981). The court may, in its discretion, consider oral testimony in a summary judgment proceeding; matters that are subject to judicial notice and exhibits that are otherwise admissible may also be received in ruling on the motion.[5] See 6 Moore's Federal Practice 56.11(8)(9) (2d Ed. 1948), and 10 Wright and Miller, Federal Practice and Procedure: Civil § 2723.

"Whatever evidence is used by the trial court in considering a motion for summary judgment, that evidence [must] be reviewed in the light most favorable to the party opposing the motion." *Johnson v. Haugland, supra*, 303 N.W.2d at 537.

The burden of proof is on the movant to show clearly that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Albers v. No. Dak. Racing Club, Inc.*, 256 N.W.2d 355, 358 (N.D.1977). Summary judgment is improper if reasonable differences of opinion exist as to inferences to be drawn from *undisputed* facts. *Benson Cty. Co-op, Etc. v. Central Livestock*, 300 N.W.2d 236, 239 (N.D. 1980).

The Schollmeyers argue that the only *undisputed fact* in this case is the fact that a sum of money was borrowed from the Bank. In their view, there are two versions of the events ensuing after the loan: (1) the Bank's claim that the note was in default after two payments, and (2) their claim that "the note was consolidated into a subsequent note, and that insurance proceeds . . . were specifically earmarked for its reduction." The Schollmeyers argue that these differing accounts created a factual dispute that should have been resolved at trial.

To answer the Schollmeyers' contention that the $221,120.58 note extinguished the $24,000 note, the Bank marshals a mass of oral and documentary evidence.[6]

---

**5.** In ruling on the Bank's motion, the district court considered the oral testimony of the Bank's vice president and exhibits offered by the parties. He also took judicial notice of the suit on the $221,120.58 note. No issue as to the propriety of this evidence is presented.

We note, however, that oral testimony must be received with great care. Otherwise, the summary judgment proceeding may become a preliminary trial. *See* 10 Wright & Miller, Fed-

eral Practice and Procedure: Civil § 2723 at 487–488.

**6.** A summary of the Bank's records describing the debts represented by the $221,120.58 note was prepared and received as Exhibit # 1 at the summary judgment hearing:

| ACTION | NOTE NUMBER | PRINCIPAL | INTEREST |
|---|---|---|---|
| Renewal | 183155 | $187,382.75 | $5,308.33 |
| Paid B & S Feed Note (Past due) | 181806 | 4,000.00 | 270.68 |

A "sham issue of fact" is the characterization the Bank places on the Schollmeyers' claim that the insurance proceeds were intended to reduce the $24,000 note. The Bank says, "[Mr. Schollmeyer's] mistaken belief that [the note] was to have been paid doesn't alter the fact that he owed the Bank the unpaid balance of the [$24,000] note."

 We hold that the district court erred in granting the Bank's motion for summary judgment. Several unresolved issues of material fact regarding the relation between the two notes are raised by the Schollmeyers' affidavits.

For example, the assertions concerning the incorporation of the $24,000 note into the subsequent $221,120.58 note cause us to wonder whether there was an agreement between the parties which extinguished the earlier note. The law is that the taking of a new note does not operate to discharge the indebtedness unless it is agreed that the indebtedness should be discharged. *Anderson v. Kain*, 40 N.D. 632, 169 N.W. 501, 503 (1918).

While the Schollmeyers' affidavits may appear flimsy against the black and white ledgers of the Bank, the movant is not entitled to summary judgment merely "because the facts [it] offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial." 10 Wright & Miller § 2725 at 514.

Accordingly, the district court's summary judgment in favor of the Bank is reversed and the case is remanded for a trial on the merits.

| ACTION | NOTE NUMBER | PRINCIPAL | INTEREST |
|---|---|---|---|
| Cashier's Check | IL67582 | 3,451.74 | --- |
| Overdraft – B & S Feed | | 15,671.00 | --- |
| Past due pymt. on note B & S Feed – # 179,768 | 179,768 | 2,998.48 | 2,037.60 |
| TOTAL | | $221,120.58 | $213,703.97 | $7,616.61 |

Note # 179,768, listed as the fifth entry on the above summary, is the $24,000 note. The pay-

ERICKSTAD, C. J., and VANDE WALLE, SAND and PAULSON, JJ., concur.

ment of $5,036.08 ($2,998.48 principal; $2,037.60 interest) was, according to the Bank official and the payment schedule on the note, the last payment received on the $24,000 note. The Bank acknowledges that this payment on the $24,000 note was part of the debt encompassed by the $221,120.58 note. It argues, however, that the evidence shows conclusively that the remaining balance of the $24,000 note ($20,838.41) was not incorporated into the $221,120.58 note.