In re Kenneth R. ROBERTS and Colleen K. Roberts, each individually and d/b/a C–K Stables, Debtors.

Gregory F. BUTLER, Plaintiff,

v.

Kenneth R. ROBERTS and Colleen K. Roberts, each individually and d/b/a C–K Stables, Defendants.

Bankruptcy Nos. 84–05501, 84–05581. Adv. No. 85–7014.

United States Bankruptcy Court, D. North Dakota.

Nov. 4, 1985.

Robert O. Wefald, Bismarck, N.D., for plaintiff.

David L. Evans, Bismarck, N.D., for defendants.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Plaintiff, Gregory F. Butler (BUTLER), commenced the above-entitled adversary proceeding by Complaint filed on January 25, 1985, seeking a determination that two loans made to the Debtors, Kenneth R. Roberts and his wife, Colleen K. Roberts (DEBTORS), in 1981 and 1983 are non-dischargeable pursuant to sections 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code. The Debtors generally deny the allegations and, as an affirmative defense, allege that the 1983 loan was taken in satisfaction of the 1981 loan, the effect of which was to efface Butler's security interest taken in consequence of that loan along with any fraud allegedly perpetrated by them in obtaining the 1981 loan. Trial was held on October 10, 1985. From the evidence submitted at trial, the Court finds the material facts to be as follows:

## FINDINGS OF FACT

The Debtor, Kenneth Roberts, is a developer who, with his wife, also raises horses through a partnership known as C–K Stables. He and Butler are long-time acquaintances, and in 1981 Butler became associated with Econ, Inc., a waste oil processing business. The Debtor was president and general manager of the company, and Butler was on the Board of Directors.

On June 5, 1981, the Debtors borrowed $10,000.00 from Butler which was used in financing Econ, Inc. Although a note evidencing this loan was not produced, Kenneth at trial acknowledged its existence. As security therefor, the Debtors extended to Butler a continuing security interest in eleven registered quarter horses located in Burleigh County. The security agreement, dated June 5, 1981 and filed as a financing statement on June 9, 1981, provides that the horses are in the actual or constructive possession of the Debtor and that the Debtor "warrants that no financing statement covering any of the collateral is on file in any public office; that the Debtor is, and will be, the lawful owner of all of the collateral free of all liens and claims whatsoever, other than the security interest hereunder ...".

The 1981 loan remained unpaid, and on May 31, 1983, the Debtors signed another note for the principal sum of $16,084.93 with interest at the rate of 15% per annum. This note is a two-page typed document prepared by Butler's attorney. The note itself makes no reference to the 1981 note nor in any way suggests that it is a renewal or replacement. Attorney Thomas Smith, its drafter, testified that it was in part a renewal of the 1981 note, together with accrued interest, plus $5,000.00 in new money. The Debtor, Kenneth Roberts, testified that he understood the 1983 note included the previous $10,000.00 note plus $5,000.00 in new money. Similarly, Butler testified it incorporated the previous $10,-000.00 note and is the basis for the instant proceeding. Mrs. Roberts did not recall the circumstances of the 1983 loan. The $5,000.00 was used by the Debtor for personal obligations.

The 1983 note provides, "this note is secured by a mortgage made by the maker to the payee of even dates herewith, on property situated in the County of Burleigh and State of North Dakota." The 1983 note makes no reference to the earlier security given in 1981. As security for the 1983 note, the Debtors extended to Butler a mortgage on their home. The mortgage specifies that the property is free from all incumbrances, "except prior mortgages of record". No title search was conducted prior to making the note or recording the mortgage. Atty. Smith said he did not make a search because the Debtors and Butler were friends and Kenneth orally indicated there was more than enough equity to cover the note. Butler himself checked the courthouse records later when he had the mortgage recorded. At that time, he discovered there were numerous and substantial mortgages of record with priority over his. The home upon which the mortgage was given has a market value of $145,000.00 according to the Debtors. As guarantor of a $286,000.00 loan made by the Bank of Kirkwood Plaza, n/k/a Dakota Bank, to Econ, Inc., the Debtors in 1981 gave the Bank a mortgage on their home in the amount of $286,000.00. Kenneth testified that at the time of this guarantee, Econ, Inc. was worth over $1.4 million, and he felt the company would have no problem paying the debt. Exclusive of the Bank's mortgage, the priority incumbrances total approximately $97,000.00 which would leave enough equity to satisfy Butler's $16,000.00 mortgage. At the time of negotiations, Kenneth Roberts led Butler to believe the house had sufficient equity to cover the $16,000.00 note. Unfortunately, Econ, Inc. filed for Chapter 11 relief on May 4, 1984.

Butler, as a member of the Board, was aware the company had borrowed the $286,000.00 but from the facts it is not certain he knew the Debtors had pledged their home as security for the company debt. In any event, Butler testified that when asking for and obtaining a mortgage

on the Debtors' home, his intent was to obtain additional security for the $5,000.00 in new money beyond the security interest in horses he had been previously given in 1981. Kenneth Roberts, on the other hand, said it was his understanding in 1983 that Butler no longer wanted any interest in the horses. His wife understood the 1983 loan was secured by the house alone. It must be noted that the 1981 security agreement and financing statement covering the horses has never been terminated.

When the Debtors gave Butler a purported security interest in the eleven horses, they had already been pledged as collateral to the Bank of Kirkwood Plaza by virtue of a security agreement dated January 8, 1981, covering livestock owned by the Debtor; and the Bank yet retains its paramount security interest in all of the Debtor's livestock. Kenneth Roberts claims that when he extended a security interest to Butler in the horses in June 1981, he did not realize the Bank's security interest covered them. He acknowledged, however, that he signed both the security agreement and the financing statement pledging livestock as collateral to the Bank and that the only livestock he owned were horses. His wife was not signatory to the Bank note or security interest pertaining to livestock. However, the note was made out to Kenneth Roberts, dba C–K Stables, a partnership between he and his wife.

Butler at trial did not state whether he relied on the existence of the horses as collateral or the existence of sufficient home equity as an inducement to making either the 1981 or 1983 loans. The debt of $16,084.93 represented by the 1983 note, plus interest thereon at the rate of 15% per annum from May 31, 1983, is the sum Butler seeks to have declared non-dischargeable by the instant action.

## CONCLUSIONS OF LAW

### 1.

Before assessing the facts against the requisite elements of section 523(a)(2), it is necessary to identify the instances of misrepresentation claimed to have precipitated the 1983 loan. Although Butler is suing upon the 1983 note, he claims that note is a renewal made on the reasonable belief that the Debtors' statement regarding the home equity was correct and also upon his continuing belief that the Debtors had not pledged the horses to any other party. The Debtors argue that the 1983 note was not a renewal but a wholly new note taken not in reliance upon the existence of horses but rather upon wholly new security, that being the home equity. Accordingly, whatever false representations that might have occurred as regards the 1981 note cannot be claimed by Butler as a basis for recovery of the 1983 note. It is the Debtors' position that the 1983 note was taken and new money given solely in reliance upon a new promise of security with no reference to, or intent to rely upon, the old.

■ One of the elements of proof necessary in a section 523(a)(2) action is that of reasonable reliance on the part of a creditor. As it has evolved, the term has come to connote not only actual reliance but the concept of proximate cause as well. This is not to say that proximate cause is an independent element of proof but stems from the language of section 523(a)(2) which excepts a debt for money from discharge if *obtained by* means of a false representation or *use of* a statement in writing. The statute itself presupposes in the first instance that it was the representation or statement which was the causative factor, without which none of the other elements of section 523(a)(2) are reached. If the 1983 note was a wholly new obligation supported by and based upon new consideration, then Butler's claim of reliance upon the 1981 security agreement would be misplaced because the effect of the 1983 note would be the discharge of the 1981 obligation.

■ Under N.D.Cent.Code § 41–03–68(2) (U.C.C. § 3–601(2)), a party's liability on an instrument may be discharged by any act or agreement with such party which would apply to any other contract dispute under state law. This section al-

lows for discharge of a negotiable instrument by novation. It is upon the theory of novation that the Debtors claim their obligation on the 1981 note and the Plaintiff's concomitant reliance upon the 1981 representations were extinguished. Novation, if found to have occurred, results in the new note being substituted for the old, the effect of which is discharge of the old. Novation is never presumed but must be proved by the party asserting its existence. Absent such proof, it is generally held that a new note merely evidences the same debt by a new promise and does not constitute a payment or discharge of the original. *Dakota Northwestern Bank Nat. v. Schollmeyer,* 311 N.W.2d 164 (N.D.1981); *Karzen v. Heitzmann,* 86 N.W.2d 514 (N.D. 1957). The question of novation turns upon the intent of the parties. There must be demonstrated a clear mutual intent or agreement between the parties that the old obligation was to be extinguished by the new. In the case of notes, it must be clear from the evidence that the new note was given with the understanding on the part of both parties that the effect would be to extinguish the old. *Commerce Union Bank v. Burger-In-A-Pouch, Inc.,* 657 S.W.2d 88, 37 U.C.C.Rep.Serv. 192 (Tenn. 1983); *First Pennsylvania Bank, N.A. v. Triester,* 251 Pa.Super. 372, 380 A.2d 826, 23 U.C.C.Rep.Serv. 376 (1977); *Ampex Corp. v. Appel Media, Inc.,* 374 F.Supp. 1114 (D.C.W.D.Pa.1974). An express release or cancellation of the old is not necessary, and the requisite intent may be inferred from the acts and conduct of the parties together with other existing circumstances. *Russell v. Northeast Bank,* 527 S.W.2d 783, 18 U.C.C.Rep.Serv. 161 (Tex. App.1975). The fact that additional security is taken is alone not determinative of the issue. *Liberty National Bank & Trust Co. v. Dvorak,* 199 N.W.2d 414 (N.D.1972). The *Liberty* case is not determinative of the issues herein because that case did not distinguish renewal from novation in the context of original parties but rather was concerned with the effect of renewal upon the continuing obligation of a grantor. The law in North Dakota with regards to novation on a negotiable instrument is as expressed in the previously cited cases of *Schollmeyer* and *Karzen,* supra.

■ Novation is a question of fact with the burden of proof resting on the party so claiming. The party urging its existence must prove intent of the parties and overcome the legal presumption that the original is yet valid. The facts in the instant case do not support the Debtors' allegation of novation. The 1981 note was not produced at trial, and there was no testimony suggesting it had been satisfied or surrendered in exchange for the 1983 note. Similarly, the 1981 security interest taken in horses was never terminated. The Debtor, Kenneth Roberts, as well as the Plaintiff, Butler, both acknowledged at trial that the 1983 note was a rollover of the 1981 note plus new money. The evidence does not suggest that it was the intent of either that the original obligation should be extinguished and supplanted by the 1983 note but rather that the 1983 note was merely a renewal of the former. The evidence for novation fails, leaving the Court to find that the liability on the 1981 note was never discharged. Butler, in agreeing to the renewal and the loan of additional funds in 1983, quite properly could have done so relying upon the existence of security given in 1981 as well as the new offer of additional security.

## 2.

■ We now reach a consideration of the elements necessary to prove a claim under section 523(a)(2). Section 523(a)(2)(A) of the Code excepts from discharge any debt for money, property, services, or an extension, renewal or refinancing of credit to the extent obtained by:

(A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition* (emphasis added).

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(B) of the Code excepts from discharge any debt for money, property, ser-

vices, or an extension of credit, to the extent obtained by:

(B) *use of a statement in writing —*

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). The distinction between 523(a)(2)(A) and 523(a)(2)(B) is that (a)(2)(A) includes any acts or statements including those made orally but *excludes* oral statements respecting the debtor's financial condition. To be actionable under section 523(a)(2), a statement respecting the debtor's financial condition must be in writing and otherwise meet the requirements of (a)(2)(B). If in writing, (a)(2)(B) is sufficiently broad to include any statement made by the debtor and not just formal financial statements and documents used in a commercial or bank setting. *Engler v. Van Steinburg,* 744 F.2d 1060 (4th Cir. 1984); *In re Cook,* 46 B.R. 545 (Bankr.E.D. Va.1985). The *Engler* case held that a debtor's assertion that he owns assets free of other liens is a statement respecting his financial condition but, in order to bar his discharge, it must be in writing. *Engler,* 744 F.2d at 1061.

Whether basing a claim upon section (a)(2)(A) or section (a)(2)(B), the creditor must prove each of the following elements by clear and convincing evidence:

(1) that the debtor made representations;

(2) that at the time made, he knew them to be false;

(3) that the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor reasonably relied on the representations;

(5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.

*In re Houtman,* 568 F.2d 651 (9th Cir. 1978); *In re Vickers,* 577 F.2d 683 (10th Cir.1978); *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540 (D.C.W.D.Va.1967); *In re Mutschler,* 45 B.R. 482 (Bankr.N.D.1984); *In re Wightman,* 36 B.R. 246 (Bankr.N.D.1984). Additionally, if the statement is one respecting the debtor's financial condition, then in addition to the foregoing five elements there must be proof of a writing, since an oral statement regarding the debtor's financial condition is insufficient.

**3.**

■ The misrepresentations alleged by Butler as a basis for making the 1983 renewal stems from the 1981 statement regarding existence of lien-free horses as well as the latter comments by the Debtor regarding home equity. Either of these occurrences, without the other, may stand as a basis for non-dischargeability under section 523(a)(2) providing the requisite elements as noted above are met.

The statement with respect to the Debtors' equity in their home was oral in nature. The only writing upon which reliance could be based in this regard was the mortgage itself which clearly cautions Butler as mortgagee to be aware of prior mortgages of record. From the face of the document, Butler was put on notice that there might be mortgages ahead of his. The mortgage document, as a writing, was not misleading or misrepresentative of the Debtors' financial condition, nor does it contain any language which is false. The comments made by Kenneth Roberts at the time of the 1983 transaction regarding his home equity position was a statement representing he and his wife's financial condition, but that statement, even if misleading and relied upon by Butler, does not afford him a basis for relief under section 523(a)(2)(B) because it was not in writing; nor is it a basis for relief under section 523(a)(2)(A) by virtue of the statute itself specifically excepting statements regarding financial condition.

Nonetheless, statements made by the Debtors with respect to their financial condition which were relied upon by Butler in

making the 1981 loan may still serve as a basis for denying discharge of the obligation incurred in 1983 providing again that each of the requisite elements are met.

■■■ With respect to the 1981 loan, the Court is satisfied that the security agreement is a materially false written statement pertaining to the Debtors' financial condition. By that agreement, the Debtors extended to Butler a security interest in horses and by which the Debtors assured him were free of any other liens. This was an untrue and materially false statement because the horses had been previously pledged as collateral to the Bank, a fact the Court concludes the Debtors knew of or should have been aware of despite protestations to the contrary. Although the note and security agreement given to the Bank were signed by Kenneth only, the note was in the name of Kenneth Roberts, d/b/a as C.K. Stables, a partnership between he and his wife. C.K. Stables being a partnership, Kenneth Roberts had the authority, as agent of the partnership, to grant the Bank a security interest without his wife's signature. *See* N.D.Cent.Code § 45–06–01; *Maercklein v. Maercklein*, 64 N.D. 733, 256 N.W. 180 (1934). Any representations made by Kenneth Roberts as a partner of C.K. Stables are representations of the partnership and imputed to the partners.

Intent to deceive is a difficult concept, but the mere fact that the statement is false and that the debtor knew it was false has been held determinative of an intent to deceive. *In re Rodriguez*, 29 B.R. 537 (Bankr.E.D.N.Y.1983); *In re Coughlin*, 27 B.R. 632 (Bankr.App. 1st Cir.1983). Although Kenneth Roberts claims the security agreement he signed for the Bank was one of many and that he did not realize it concerned the horses, the agreement was not a complicated document full of undecipherable legalese. Rather, it was a very simple document bearing the word "livestock" along side of which there was a typed-in "X". Not only did Kenneth Roberts sign this agreement, but he also signed a U.C.C.–1 form specifically pertaining to livestock. He acknowledged at trial that the only livestock he owned were the horses. Five months later, the Debtors jointly signed another security agreement pledging the horses to Butler and specifically stated that there were no other financing statements covering them. From these facts, the Court is satisfied that the element of intent has been met. The Debtors argue that Butler should have made a U.C.C. search and his failure to do so must be regarded as unreasonable. This Court has previously held that where the statement is not facially incomplete or inaccurate, there is no obligation upon a creditor to make further inquiry. *Mutschler*, 45 B.R. at 493. The security agreement is complete on its face and, by it, the Debtors warranted that no other financing statements were on file. There is nothing on the face of the financing agreement as contrasted to the mortgage document which raised a "red flag". Butler was within his right to rely on the statements made within the security agreement without making any further inquiry.

This leads the Court now to consider what is the most critical issue in this case, and that is whether Butler did in fact rely upon the existence of the eleven horses in making the $10,000.00 loan and ultimately in going along with its rollover into the later 1983 loan. Reliance assumes a degree of causation without which the loan would not have been made. *In re Coughlin*, supra. As to this element, the creditor must prove by clear and convincing evidence that he considered and relied upon the statement in question. He must produce evidence demonstrating that the loan would not have been made if he had received accurate information. *Coughlin*, supra; *In re Mutschler*, supra; *In re Drewett*, 13 B.R. 877 (Bankr.E.D.Pa.1981); *In re Shipley*, 1 B.R. 85 (Bankr.D.Md. 1979). As to this issue, the Court is left in doubt. Although Butler testified regarding both the 1981 and 1983 security agreements, he did not say that he relied upon the existence of the horses, without which the loan and its renewal would not have been made. Not content to rely on its own bench notes, this Court ordered a partial

transcript of Gregory Butler's testimony and carefully reviewed it as to this issue. No where in his testimony does Butler use the word rely or reliance, and no where does he specifically state "I relied upon the existence of the security" or words to that effect. There is older case law existing which holds that evidence of reliance may be established by inferences. According to these cases, where a statement of financial condition is made to support an application for credit and credit is thereafter given, an inference of reliance is created which must be rebutted by the debtor. *Palter v. Lake Sales, Inc.*, 435 F.2d 120 (9th Cir.1970); *Industrial Bank of Commerce v. Bissell*, 219 F.2d 624 (2nd Cir.1955). These cases, and others similar, were decided pre-Code and were based upon section 14(c) of the Bankruptcy Act (11 U.S.C. § 32(c)), which pertains to discharge of a debtor rather than dischargeability of a debt. As with the other elements of proof attendant to a section 523(a)(2) cause of action brought under the Bankruptcy Code, reliance must be shown by clear and convincing evidence. Inferences are not sufficient. As previously noted, Butler through his testimony did not produce any direct evidence that he relied on the false statements. He did not say why he extended the $10,000.00 loan to the Debtors nor give any indication what might have caused him to make it; whether it was the promise of security, his involvement with Econ, Inc., or his friendship with Kenneth Roberts. The reason is unknown. With regards to the 1983 renewal note, the testimony is similarly devoid of direct evidence of reliance. We know the Debtors wanted an additional $5,000.00 and that Butler wanted additional security because there were not enough horses to cover it. Again, however, the Court is left guessing on the issue of reliance. It is unknown whether Butler relied on the statements or whether the renewal was made because of his friendship with the Debtors or for some other unknown reason. Butler has failed to prove reliance by clear and convincing evidence, and that failure is fatal to his challenge of dischargeability. As this Court has previously noted in *In re Wight-*

*man*, supra, if any one of the elements of proof is absent, irrespective of how overwhelming the proof as to the others might be, the plaintiff may not prevail in a section 523(a)(2) action.

Accordingly, and for the reasons stated, the indebtedness of $16,084.93 owing to the Plaintiff, Gregory Butler, may be discharged.

IT IS ORDERED that the Complaint of the Plaintiff, Gregory Butler, against the Defendants, Kenneth Roberts and Colleen Roberts, brought pursuant to section 523(a)(2)(A) and section 523(a)(2)(B) be DISMISSED.

JUDGMENT MAY BE ENTERED ACCORDINGLY.