**In re George W. LABER, Jr., and Diane M. Laber.**

**Bankruptcy No. 86–05080.**

United States Bankruptcy Court,
D. North Dakota.

June 5, 1986.

Edward F. Klinger, Craig Campbell, Moorhead, Minn., for debtor.

Jonathan R. Fay, Fargo, N.D., for Bank.

Wayne Drewes, Fargo, N.D., trustee.

William Westphal, Minneapolis, Minn., U.S. trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a Motion to Avoid Lien, filed April 17, 1986, by the debtors, George and Dianne Laber (Debtors). The Debtors allege that the lien held by First State Bank of New Rockford (Bank) is a nonpossessory, nonpurchase-money security interest, avoidable pursuant to 11 U.S.C. § 522(f). On April 21, 1986, the Bank filed its response in resistance to the Debtor's motion. The Bank alleges that its security interest came into effect prior to enactment of section 522(f) of the Bankruptcy Code, has remained in effect at all times pertinent thereto, and consequently is not subject to avoidance under section 522(f).

A hearing was held before the undersigned on May 14, 1986. The material facts are as follows:

## FINDINGS OF FACT

The Debtors filed a joint bankruptcy petition February 3, 1986, wherein they exempted farm machinery and equipment in the amount of $16,810.00. The parties are apparently in agreement that the lien of the Bank is a nonpossessory, nonpurchase-money lien of the Bank as to the specifically identified farm machinery and equipment.

The security interest held by the Bank originally attached and was perfected in 1971. The security interest has subsequently been continued on four occasions by filing of a UCC–3 continuation statement, twice prior to October 1, 1979, and twice thereafter. The original security agreement executed in 1971 is apparently the document which the parties agree establishes a security interest in the Debtors' machinery. Although various renewal notes have been executed since 1971, there is no evidence to establish that any additional security agreements have been executed. The most recent note which is evidence of the Debtors' obligation to the Bank was executed on January 29, 1985, in the amount of $191,544.86. This note states that the purpose of credit is to "renew notes" and the following line is checked:

"This note is secured by a Security Agreement dated _____, 19____."

Also, within the section entitled "SECURITY" is the following:

"Crop Mortgage, Farm Machinery, Pigs."

Although the above facts were not formally received into evidence, they were contained within the parties' briefs. Both parties have agreed to the facts as portrayed in the briefs.

## CONCLUSIONS OF LAW

Section 522(f) of the Bankruptcy Code provides for the avoidance of certain liens, including implements and tools of the trade, to the extent the liens are nonpossessory, nonpurchase-money liens and the property is eligible for exemption. 11 U.S.C. § 522(f). The Bankruptcy Reform Act of 1978, Pub.L. 95–958, 92 Stat. 2549, from which section 522(f) is derived, was enacted on November 6, 1978, and became effective on October 1, 1979. *United States v. Security Industrial Bank*, 459 U.S. 70, 71, 103 S.Ct. 407, 408, 74 L.Ed.2d 235 (1982).

In *United States v. Security Industrial Bank*, the United States Supreme Court was presented with the issue of whether section 522(f) was to be applied retrospectively or prospectively. Based upon principles of statutory construction, the Court affirmed the Tenth Circuit and concluded that liens which were established before

the enactment date of the statute were not subject to being avoided pursuant to section 522(f). *Security Industrial Bank*, 459 U.S., at 81–82, 103 S.Ct. at 413–14. Thus, the issue for this court to decide is whether the lien, which the parties agree was in effect on the date the Debtors filed their petition, was established prior to enactment of section 522(f), subsequent to its effective date of October 1, 1979, or within the gap period. The Supreme Court did not consider the effect of a security agreement created during the gap period. *Id.*, at 82 n. 11, 103 S.Ct. at 414 n. 11.

Prior to the enactment of the Uniform Commercial Code, which has been adopted in North Dakota, the substitution of a new note for one secured by a chattel mortgage did not extinguish the debt evidenced by the latter note so as to discharge the mortgage, unless such had been the intention of the parties as shown by something more than the mere act of substitution. 69 Am. Jur.2d, *Secured Transactions* § 542 (1973). *See also Edison Bank v. Mayer*, 202 F.Supp. 620, 623 (D.N.J.1962); *Miller v. McCarty*, 47 Minn. 321, 50 N.W. 235, 236 (1891). The mortgage was considered to secure the debt, and not merely the evidence of it; and since the mortgage continues, a change in the evidence did not pay the debt. 69 Am.Jur.2d, *Secured Transactions* § 542 (1973); *Stram v. Jackson*, 248 Mich. 171, 226 N.W. 888, 890 (1929). Absent any indication in the Uniform Commercial Code that the above rule was changed, it appears that substitution of notes, taking of a new note, or change in the security agreement should not by themselves affect a security interest. 69 Am. Jur.2d, *Secured Transactions* § 542 (1973).

The rule in many states is that a renewal obligation does not extinguish the original obligation unless a novation occurs. *See, e.g., Cantrill Construction Co. v. Carter*, 418 F.2d 705, 707 (6th Cir.1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970). Likewise, the law in North Dakota is that the "taking of a new note does not operate to discharge indebtedness unless it is agreed that the indebtedness should be discharged." *Dakota*

*Northwestern Bank Nat. v. Schollmeyer*, 311 N.W.2d 164, 167 (N.D.1981). *See also Karzen v. Heitzmann*, 86 N.W.2d 514, 516 (N.D.1957); *Anderson v. Kain*, 40 N.D. 632, 169 N.W. 501, 503 (1918).

Under N.D.Cent. Code § 41–03–68(2) (U.C.C. § 3–601(2)), a party's liability on an instrument may be discharged by any act or agreement with such party which would discharge a contract for the payment of money. This section allows for discharge of a negotiable instrument by novation. *In re Roberts*, 54 B.R. 765, 769 (Bankr.D.N.D. 1985). Although the Debtors do not specifically allege that a novation has occurred, the court cannot conceive how a security agreement, between the Debtors and the Bank, could have terminated absent a novation.

A novation results in a new note being substituted for the old note. *Id.*, at 769. "Novation is never presumed but must be proved by the party asserting it existence." *Id., See also* Am.Jur.2d *Novation* §§ 12, 70. The question of novation turns upon the intent of the parties. There must be demonstrated a clear mutual intent or agreement between the parties that the old obligation was to be extinguished by the new. *In re Roberts*, 54 B.R., at 769.

■ Whether a novation has occurred is a question of fact. The party urging its existence must prove that a novation was intended and overcome the legal presumption that the original is yet valid. *Id.* The Debtors have not done so in this instance. To the contrary, no evidence of either party's intent has been introduced. Neither is there evidence or assertions that the original note has been marked "paid" or "cancelled". Accordingly, the court concludes that a novation has not occurred.

■ Having concluded that a novation did not occur, the security agreement has continued from 1971 as security for at least the original obligation, and all renewals thereof. However, in the absence of a future advances clause in the security agreement, the agreement may not be valid as security for future advances above and

beyond the renewal amount. *Cantrill Construction Co.*, 418 F.2d, at 708; *Safe Deposit Bank and Trust Company v. Berman*, 393 F.2d 401, 403–04 (1st Cir.1968). The Debtors have not introduced any evidence of the actual security agreement document or a schedule of monies dispursed which comprise the $191,544.86 note. Thus, the Debtors have not established that the security agreement secures anything less than the entire obligation.

The case law which has developed out of bankruptcy courts interpreting section 522(f) appears conflicting at first blush. In *Matter of Hitts*, 21 B.R. 158 (Bankr.W.D. Mich.1982), the Debtors obtained their first loan and executed a non-purchase money security agreement in 1972. A number of additional loans were subsequently obtained, the last being on November 13, 1979. *Id.*, at 159. On each occasion a new security agreement and note were executed. The court concluded that the last loan constituted a novation and the security interests were avoidable. Likewise, in *In re Metzig*, 33 B.R. 620 (Bankr.N.D.Tex. 1983), security agreements entered into prior to enactment of section 522(f) were renewed and extended on many occasions subsequent to the effective date of section 522(f). *Id.*, at 622. The *Metzig* court, with minimal legal analysis in support of its decision, applied section 522(f) retroactively and avoided the security interest because the notes and security devices had been renewed and executed subsequent to the effective date of the section. Without saying as much, the *Metzig* court appears to have concluded that a novation had occurred. Other courts, without specifically discussing the novation issue, appear to have found liens to be avoidable on that basis. *See In re Schneider*, 18 B.R. 274 (Bankr.N.D.1982) (my predecessor on the bench concluded that the prior debt and security interest were extinguished when a new note and security interest were substituted subsequent to enactment of section 522(f)); *In re Clark*, 9 B.R. 407 (Bankr.E. D.Va.1981) (original notes were cancelled when refinancing occurred and a new security agreement and note were executed.).

A number of other courts have found a lien non-avoidable pursuant to section 522(f). In, *In re Hickey*, 32 B.R. 588 (Bankr.S.D.Ohio), the lien in question originally attached to the debtor's property on September 13, 1977, more than a year prior to enactment of section 522(f). Although the facts do not reveal whether the note was subsequently renewed, a continuation statement was filed in 1983. The *Hickey* court concluded that the filing of a continuation statement did not create a new lien, but continued the perfection of the previously existing lien. *Id.*, at 589. Thus, the court held that the lien could not be avoided, in light of the Supreme Court's interpretation of section 522(f) in *United States v. Security Industrial Bank. Id.*, at 589. Likewise, in *Matter of Chambel*, 17 B.R. 597 (Bankr.W.D.Mo.1982), a postpetition section 522(f) refinancing agreement was held to be the same as the original security agreement which it refinanced, and thus the security interest had vested prior to enactment of section 522(f) and was non-avoidable. *Id.*, at 599.

Although the above-cited cases, both allowing and prohibiting the avoidance of liens, appear to be conflicting, they are reconcilable if one concludes that the courts allowing avoidance of the liens had determined that a novation did exist.

 This court does not adopt the analysis of *In re Hickey*, granting importance to a U.C.C. financing statement. The purpose of a financing statement is to establish priority as to a third party. It is not the basis for a debtor's liability to its creditor. *In re Slater*, 19 B.R. 954, 956 (Bankr.D.Md.1982). Nevertheless, this court believes that the better view in determining the applicability of section 522(f) is to find, that in the absence of a novation, a security interest continues to attach as security for renewal notes and is considered vested as of the original date of the execution of the agreement. This court could not conclude that the Bank's lien is avoidable as to the property the Debtors claim as exempt without concluding that the lien

**90**

is invalid as to all of the Debtors property. If the court were to hold that the security interest expired and that a novation occurred when a new note was executed, nothing has since occurred to resurrect the old security agreement or create a new security interest as security for the renewed notes. Such a result would be wholly inequitable and contrary to the dictates of the Uniform Commercial Code. Therefore, if the security interest is considered valid as to some of the collateral, it must be considered valid as to all because of its continuing nature in the absence of a novation. Thus, the court concludes that the security interest has continually been vested since 1971 and that the lien is non-avoidable.

Accordingly, the Debtors' Motion to Avoid Lien is DENIED.

IT IS SO ORDERED.