Cratsley, J.
Ord, Inc. (“Ord”) brings this suit against Charles H. Hoffman (“Hoffman") seeking to collect on an unpaid promissory note. This Court held a jury-waived trial on plaintiffs claim in September 1993. Based on the testimony, exhibits, and reasonable inferences drawn therefrom, this Court makes the following findings of fact, rulings of law, and order for judgment.
FINDINGS OF FACT
Myron Block (“Block”), a Massachusetts citizen, is the president of Ord, Inc., a Massachusetts corporation. Sometime in 1983, Block was introduced to Lowell Birrell, a New Hampshire citizen. Block and Birrell met at Birrell’s trucking company office in New Hampshire. At this time, Birrell learned that Block was an inventor. Birrell asked Block if he would be interested in participating in an income tax sheltered research and development (R&D) partnership. Block expressed an interest in participating in an R&D partnership.
Hoffman, a New Hampshire citizen, was a pilot for U.S. Air. Due to a recent pay raise, Hoffman was seeking a tax advantaged investment. Birrell suggested that Hoffman meet with Block to discuss investment opportunities. The three men met in a New Hampshire restaurant. At this meeting, Block stated that he was in the process of inventing a device that diabetics could use to determine their blood glucose levels. Hoffman agreed to invest $100,000 in the project in return for a one-half interest in the device. This was the only business meeting between Block and Hoffman.[1]
Hoffman’s primary motivation in funding the project was to obtain an R&D tax credit. Birrell advised Hoffman that he could deduct the entire investment from his 1983 net income.
Birrell prepared a promissory note and letter agreement detailing the terms of Ord’s and Hoffman’s agreement. (Ex. 1, 2.) Hoffman signed and mailed the documents to Ord. Id. The note obligated Hoffman to make four initial monthly payments of $2,500 and 45 monthly payments of $2,000. (Ex. 2).
Hoffman mailed his first payment to Ord in September 1984. (Ex. 10.) Hoffman stopped making his payments on the note in July 1986. Overall, Hoffman paid $32,000 to Ord.[2] (Ex. 10.) Hoffman never directly participated in developing or managing the project. (See Ex. 1.) Hoffman’s only activities in relation to the project were contracting with Block in New Hampshire and mailing the promissory note agreement, and $32,000 to Ord in Massachusetts. (See Ex. 1, 2, 10.)
In July 1986 the Internal Revenue Service disallowed Hoffman’s $100,000 R&D deduction. At this time, Hoffman told Block he could no longer afford to continue investing in the project.
On February 5, 1987 Block mailed a letter to Hoffman.[3] (Ex. 12.) Block proposed that Hoffman could either make up the arrearage and pay an additional three months in advance, or reassign his half-interest to Block in return for full forgiveness of the remaining debt. Id. Block gave Hoffman fourteen days to consider his offer. Id.
On February 12, 1987 Hoffman responded to Block’s letter. (Ex. 13.) Hoffman testified that he drafted a handwritten letter accepting Ord’s offer to reassign him Hoffman’s half-interest. Id. Hoffman did not mail this letter because he wanted to type it. Hoffman took the letter to the U.S. Air airport office and began typing the letter. He further testified that a secretary eventually completed typing the letter. Hoffman took the typed letter to a copy machine, but found it out of order. Hoffman says he then put the typed letter into an envelope and mailed it. Hoffman kept the hand written letter as a record of the transaction. (Ex. 5.) Block testified that he never received the letter.
In October 1987, eight months after the February 18, 1987 deadline, a Maryland attorney representing Ord contacted Hoffman for the purpose of securing payment on the Note. (Ex. 14.) Hoffman told the attorney that he had accepted Block’s offer to forgive the debt. (Ex. 5.) On February 13, 1989 Ord initiated suit against Hoffman to collect the deficiency.
RULINGS OF LAW
Pursuant to G.L.c. 106, §3-306(c) and §3-307(2) a plaintiff seeking to collect on a promissory note establishes a prima facie case by producing the instrument and proving the signatures. See Loew v. Minasian, 361 Mass. 390, 391 (1972). Once the plaintiff produces the note the burden is on the defendant to disprove liability by a preponderance of the evidence. Coupounas v. Madden, 401 Mass. 125, 129 (1987); Norfolk County Trust Company v. Vichinsky, 5 Mass.App.Ct. 768 (1977). In this case, plaintiff has established a prima facie case as the instrument has been produced and defendant has attested to his signature. See G.L.c. 106, §3-306(c) (1992); Loew v. Minasian, supra at 391. Thus, defendant has the burden of proof on defenses. See id.
*444 General Laws c. 106, §3-601(2) provides that a party is “discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money.” Hoffman has asserted the affirmative defense of novation. Thus, if Hoffman establishes that a novation occurred, G.L.c. 106, §3-601(2) operates to discharge the Note. See Federal National Bank v. O’Connell, 305 Mass. 559, 565 (1940) (burden on defendant to prove note extinguished by novation); Pearson v. O’Connell, 291 Mass. 529, 528 (1930) (defense of novation relied upon by defendant in action on promissory note); see also Ampex Corporation v. Appel Media Inc., 374 F.Supp. 1114, 1117 (W.D. Pa. 1974) (in suit upon negotiable instrument defense of novation applies to same extent as it would in any other suit upon a contract); In re Laber, 64 B.R. 86, 88 (D. N.D. 1986) (UCC §3-601(2) allows for discharge of negotiable instrument by novation); Braintree National Bank v. Payne, 303 Mass. 185, 186 (1939) (applying precursor to G.L.c. 106, §3-601(2), court found that accord and satisfaction operated to discharge promissory note).
In order to establish a novation defense, a defendant must prove that “there was an existing valid original obligation, there was an agreement of all parties to the new contract, the extinguishment of the old contract, and a valid new contract.” Larson v. Jeffrey-Nichols Motor Co., 279 Mass. 362, 366 (1932) (citations omitted). The parties’ agreement must evidence an intent to enter into a novation. See Lipson v. Adelson, 17 Mass.App.Ct. 90, 94-95 (1983) (intent can be either express or inferred from language of agreement).
It is undisputed that a valid contract existed between Ord and Hoffman obligating Hoffman to pay $2,000 a month in return for a one-half ownership in the project. (See Ex. 1,2.) This Court finds that Block’s letter of February 5, 1987 constituted an offer to enter into a new contract in which Block agreed to forgive Hoffman’s debt in return for Hoffman’s one-half ownership interest in the project. (Ex. 12); see Lipson v. Adelson, supra at 94-95 (express language of agreement can demonstrate intent to enter into a novation). Hoffman seasonably accepted Block’s offer by his letter mailed on February 12, 1987. (Ex. 13.) Hoffman’s testimony that he composed a letter accepting Block’s offer and mailed the letter on February 12, 1987 is accepted as credible by this Court. Although Block testified he never received the letter, plaintiff has offered no evidence to directly refute Hoffman’s testimony that he composed and mailed the letter.
The general rule is that “an acceptance by mail is effective upon posting if the offer does not otherwise require.” McTernan v. LeTendre, 4 Mass.App.Ct. 502, 504 (1976). This Court finds that Hoffman posted his acceptance letter and therefore a valid contract was formed. See id. at 503 (party’s mailing of option contract created an enforceable contract upon posting); see also Baldwin’s Steel Erection Co., Inc. v. Champy Construction Company, Inc., 353 Mass. 711, 715 (1968) (finding effective novation although party never received substitute contract). In essence, Hoffman’s acceptance of Block’s offer revoked the old contract and created a new contract which operated to both discharge Hoffman’s obligations and reassign Hoffman’s one-half interest in the project to Block. See Carson v. Jeffrey, supra at 366 (requiring extinguishment of old contract and creation of new contract for novation). Therefore, Hoffman has established the affirmative contractual defense of novation, and, accordingly, his obligation to pay the note is discharged. G.L.c. 106, §3-601(2).
In addition to defendant’s valid contract defense, there is a legitimate legal question whether this Court can exercise personal jurisdiction over Hoffman. Plaintiff bears the burden of establishing a factual basis for this court’s exercise of personal jurisdiction over the defendant. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 2-3 (1979). The exercise of jurisdiction must comport with both the Massachusetts longarm statute, G.L.c. 223A, and the requirements of due process under the United States Constitution. Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 931 (1st Cir. 1985). The longarm statute provides in pertinent part: “A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action ... arising from the person’s (a) transacting business in this Commonwealth...” G.L.c. 223A, §3(a). Under the due process requirement, the defendant’s contacts with the forum must be such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).
Where a non-resident contracts with a resident of the forum state, the contract alone does not establish minimum contacts. Beaver Builders v. Schnip Bldg., 622 F.Supp. 1051, 1055 (D.Mass. 1985) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). The defendant’s conduct and connection with the forum state must be such that he should reasonably anticipate being subject to suit in that forum. Hanson v. Denckla, 357 U.S. 235, 253 (1958). Where the contract was negotiated and signed and the nature and extent of pre-contract negotiations involving the nonresident parly are also relevant. Carlson v. University of Vermont, 380 Mass. 102, 108 (1980).
Here, defendant’s relationship to the forum is too attenuated to warrant a conclusion that suit in Massachusetts was foreseeable. See "Automatic” Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441 (1972) (non-resident defendant’s correspondence and partial payments to Massachusetts division of plaintiff company in action to recover unpaid balance on purchase insufficient to confer jurisdiction). Hoffman’s only acts were to mail a promissory note and payments to Block in Massachusetts. Hoffman's role was analo *445 gous to that of a passive purchaser, as distinguished from a seller who actively solicited business in the forum, e.g. Bond Leather Co., Inc., supra at 932-35, or an investor with extensive commercial contacts in the forum, e.g. First National Bank of Boston v. Bergreen, 11 Mass.App.Ct. 956 (1981). Thus, as an alternative legal resolution of this law suit, it is highly questionable whether Hoffman is subject to the jurisdiction of Massachusetts’s courts.
ORDER FOR JUDGMENT
For all the foregoing reasons, this Court ORDERS that JUDGMENT is entered for Hoffman on all claims.

 Hoffman and Ord later met at a party in Massachusetts, however, no business was discussed.

 Ord never succeeded in developing the project. After Hoffman stopped his payments, Ord ceased work on the project.

At the time Block mailed this letter, Hoffman was residing in Maryland.